IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY CALLAHAN, et al.,<br>    Plaintiffs,<br>v.<br>PAYCHEX NORTH AMERICA INC.,<br>    Defendant. | Case No. 21-cv-05670-CRB<br><br>**ORDER COMPELLING ARBITRATION** |

Defendant Paychex North America Inc. ("PNA") moves to compel arbitration in accordance with an arbitration agreement signed by Plaintiffs Stanley Callahan and Faisal Gailani while employed at PNA. As explained below, the Court finds this matter suitable for resolution without oral argument, pursuant to Local Civil Rule 7-1(b), and GRANTS PNA's motion to compel.

## I.  BACKGROUND

Plaintiffs Stanley Callahan and Faisal Gailani, who worked as Sales Representatives at Defendant Paychex North America, Inc. (PNA) from 2019 to 2020, allege that PNA violated various provisions of the California Labor Code. See SAC (dkt. 19). They claim that PNA misclassified them as outside sales representatives, failed to issue accurate itemized statements, failed to pay overtime, and failed to reimburse for business expenses. See id. ¶¶ 12-37. Plaintiffs bring this claim under California's Private Attorneys General Act (PAGA) "on behalf of [themselves] and other individuals currently and formerly employed by [PNA] as Sales Representatives or in a similar capacity." See id. ¶ 1.

PNA moves to compel arbitration of the individual PAGA claims and dismiss the representative claims. Mot. (dkt. 26). Callahan and Gailani entered into arbitration

agreements with PNA on June 3, 2020, and December 19, 2019, respectively. McHugh Decl. (dkt. 26-1) ¶¶ 7-8; Ex. B & C. The arbitration agreements were contained in PNA's HRS Sales Representative Plan Agreement and Sales Representative Level II Incentive Plan Agreement (together, the "Incentive Plans") that were sent to Callahan and Gailani via email. Id. ¶¶ 7–8. To review and sign the Incentive Plans, employees were sent a link, which took them to a document review platform, EchoSign, that would allow them to review and sign the agreement electronically. Id. ¶¶ 10–11. Employees were permitted to exit and re-enter the document as many times as they wished prior to signing, and once ready, clicked a "Start Tab" that allowed the employee to sign the agreement. Id. ¶¶ 14–15.[1] Callahan understood that by receiving the agreement via email, he was "required to sign" it, and that there was "no option to negotiate" its terms. Callahan Decl. (dkt. 27-2) ¶ 6. Gailani understood "as a matter of practice" that when his employer asked him to sign a document, the agreement "is not optional." Gailani Decl. (dkt. 27-3) ¶ 6.

The agreement requires them to resolve "any dispute" between them and PNA by binding arbitration, "including, but not limited to, a dispute arising out of or relating to [their] employment." McHugh Decl. ¶ 6. The agreement also provides:

> To the extent permitted by law without impairing the enforceability of this Agreement, each party shall only submit his, her, or its own, individual claims to arbitration and will not seek to represent the interests of any other person or entity and neither party will assert class or representative claims against the other in arbitration. To the extent permitted by law without impairing the enforceability of this Agreement, the parties further agree that class action, collective action, and representative action procedures shall not be asserted or permitted in arbitration.

McHugh Decl. Ex. B & C (Dispute Resolution Agreement) ¶ 12(e). It also includes a severability clause:

---

[1] The parties disagree as to whether employees had the opportunity to decline to sign the agreement. PNA claims that employees were given a "Decline this agreement" option, which prompted the employee to give a reason and then click "Decline." McHugh Decl. ¶ 19. Callahan, on the other hand, contends that no such option existed when he signed his agreement. Callahan Decl. ¶ 7.

2

> If any provision of the Plan or any Award becomes, or is deemed to be, invalid, illegal, or unenforceable in any jurisdiction, or would disqualify the Plan or any Award under any law deemed applicable by the Plan Administrator, then such provision shall be construed or deemed amended to conform to applicable laws. If such provision(s) cannot be so construed or deemed amended without, in the determination of the Plan Administrator, materially altering the purpose or intent of the Plan or the Award, such provision shall be stricken as to such jurisdiction for such Award, and the remainder of the Plan or Award shall remain in full force and effect.

Id. ¶ 13(d).

## II.     LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that contractual arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010). Private agreements to arbitrate under the FAA are enforced according to their terms. 9 U.S.C. § 4. Therefore, a party may petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." Id.

Generally, a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted). However, courts have developed a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), such that courts should not refuse to enforce them unless the agreement is "not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650. Under the FAA, in assessing the enforceability of a contractual arbitration provision, a district court's role is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both inquiries is affirmative, then the FAA requires the court to enforce the agreement in accordance with its terms. Id. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

3

arbitration." Green Tree Fin. Corp.- Ala. v. Randolph, 531 U.S. 79, 91 (2000).

## III.  DISCUSSION

### A.  Application of the Arbitration Provision to Plaintiffs' Claim

Plaintiffs argue that they did not agree to arbitrate the claims at issue in this action, because they allege a violation of California Labor Code §§ 925 and 432.5 from the inclusion of forum selection and choice of law provisions in PNA's Confidentiality Non-Solicitation and Non-Compete Agreement (the "CNN"). Opp'n (dkt. 27) at 4. They argue that because ¶ 12(b) of the arbitration agreement excludes "[d]isputes related to violation of the confidentiality, non-solicitation and non-compete provisions," that the parties did not agree to arbitrate the Plaintiffs' claims in this action.

This argument clearly fails. As PNA argues, ¶ 12(b) excludes "[d]isputes related to the violation of" such provisions, not all disputes related to them. Reply (dkt. 28) at 1–2. In this case, Plaintiffs bring claims that specific provisions contained in the CNN are unlawful; they do not dispute any violation of those provisions. As a result, those claims are not excluded and the parties agreed to arbitrate the claims at issue here.

### B.  Validity of the PAGA Waiver

Plaintiffs further argue that the Supreme Court's most recent decision regarding preemption of arbitral waivers of PAGA actions, Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906 (2022), requires the Court to find that the PAGA waiver in this agreement is invalid. This argument also fails.

Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In Moriana, the Court held that the FAA did not preempt a generally applicable California rule disallowing "wholesale waiver[s] of PAGA claims." 142 S. Ct. at 1924-25. But the FAA did preempt a California rule that prevented parties from agreeing to "divi[de] PAGA actions into individual and non-individual claims" and send the individual claims to arbitration. Id. at 1924. Although the agreement in Moriana broadly waived all PAGA claims, it also included a severability clause providing that "any

4

1   portion of the waiver that remains valid must still be enforced in arbitration." Id. at 1925
2   (internal quotation marks omitted). That waiver was enforceable to the extent that it
3   simply required the individual claim (alone) to proceed in arbitration. Id. The Court went
4   on to hold that, "as [the Court] see[s] it, PAGA provides no mechanism to enable a court to
5   adjudicate non-individual PAGA claims once an individual claim has been committed to a
6   separate proceeding." Id. at 1925 (citing Cal. Lab. Code § 2699(a), (c)). Thus, after a
7   plaintiff's individual PAGA claim is compelled to arbitration, he "is no different from a
8   member of the general public," lacks statutory standing to maintain non-individual claims,
9   and "the correct course is to dismiss [the] remaining claims." Id.

10       Plaintiffs and PNA entered into valid, binding arbitration agreements that require
11   Plaintiffs to arbitrate all individual claims. Paragraph 12(e) of the agreement explicitly
12   states that "each party shall only submit his, her, or its own, individual claims to
13   arbitration." Dispute Resolution Agreement ¶ 12(e). The clear intent of Paragraph 12(e) is
14   to send the individual claims to arbitration—exactly the sort of provision that the FAA
15   does not permit California to invalidate. See Moriana, 142 S. Ct. at 1925 ("Viking was
16   entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual
17   PAGA claim.").

18       Plaintiffs emphasize that Paragraph 12(e) goes on to forbid "represent[ing] the
19   interests" of others and then states that "class action, collective action, and representative
20   action procedures shall not be asserted or permitted in arbitration." Dispute Resolution
21   Agreement ¶ 12(e). They therefore argue that the provision constitutes the type of
22   "wholesale waiver of representative actions" that remains unenforceable under California
23   law. Opp'n at 6. But, in context, Plaintiffs' reading of these lines is incorrect. The
24   primary intent of the provision is in stated up front: it requires parties to "submit . . .
25   individual claims to arbitration." Dispute Resolution Agreement ¶ 12(e). The phrase
26   "class action, collective action, and representative action procedures" is used to mean
27   procedures related to "non-individual" or class claims.

28       Even if this sentence can also be read as unenforceably broad, the Court construes it

1  to be enforceable. The severability clause states that "[i]f any provision of the Plan or any
2  Award becomes, or is deemed to be, invalid, illegal, or unenforceable in any jurisdiction,
3  or would disqualify the Plan or any Award under any law deemed applicable by the Plan
4  Administrator, then such provision shall be construed or deemed amended to conform to
5  applicable laws." Dispute Resolution Agreement ¶ 13(d). Plaintiffs correctly observe that
6  the severability clause does not explicitly permit severing only a "portion" of a provision
7  (as it did in Moriana). But they are incorrect that the reference to the Plan Administrator
8  indicates that only the Plan Administrator may "construe" the agreement to conform to the
9  law. Opp'n at 6–7. The clause provides that unenforceable provisions "shall be construed
10  or deemed amended," and it nowhere limits that interpretive power to the Plan
11  Administrator. Dispute Resolution Agreement ¶ 13(d). Even if waiver of "representative
12  action procedures" were read as an unenforceable "wholesale waiver," the Court
13  "construe[s]" the sentence in the context of the paragraph to waive only the non-individual
14  parts of claims. That is especially so because Paragraph 12(e) begins with the phrase "to
15  the extent permitted by law without impairing the enforceability of this Agreement."
16  Dispute Resolution Agreement ¶ 12(e). To interpret these uses of the word
17  "representative" to invalidate the first sentence is to ignore the clear objective intent of the
18  entire provision.[2]

19  Once the individual PAGA claims are compelled to arbitration—in the absence of
20  any superseding holding by a California court on statutory standing here—the "correct
21  course is to dismiss" the representative PAGA claims. Moriana, 142 S. Ct. at 1925.

22  **C.  Unconscionability**

23  Finally, plaintiffs argue that the arbitration agreement is unenforceable because it is
24  unconscionable under California law. Because the provisions here fail to present more than
25  a "modest" level of procedural and substantive unconscionability, the arbitration

---

[2] Plaintiffs also argue that ¶ 10 only permits "amend[ment] or terminat[ion]" of ¶ 12 by express written agreement of the parties. Opp'n at 6. But it defies common sense to understand this provision on "amendment" to foreclose the "construing" of provisions that ¶ 13 explicitly calls for.

6

agreement is enforceable. See also Grant v. Paychex N. Am. Inc., 21-cv-5603, dkt. 26 (N.D. Cal. Oct. 13, 2021).

In analyzing contracts under the FAA, courts generally "apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Because Plaintiff filed this lawsuit in California, this Court will apply California law to the extent that it does not directly conflict with the FAA.[3] Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010). Under California law, a contract is unenforceable when it is both procedurally and substantively unconscionable:

> [T]he prevailing view is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation marks omitted) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)).

### 1. Procedural Unconscionability

A determination of procedural unconscionability involves the analysis of two factors: (1) oppression; and (2) surprise. Id. at 1280. Oppression is found when there is such an inequality in bargaining power between two parties that there is no actual negotiation and a lack of meaningful choice. Id. Surprise is found when the "supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." Id. (internal quotation marks omitted). As a preliminary matter, California courts consider contracts of adhesion procedurally unconscionable to at least a minimal degree due to a lack of bargaining power. Bridge Fund Cap. Corp., 622 F.3d at 1004. However, California courts only refuse to enforce contracts of adhesion if they are "unduly

---

[3] Where state law directly conflicts with the FAA, the FAA displaces state law. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011).

7

oppressive." Armendariz, 24 Cal. 4th at 113. The agreement here has at most a low level of procedural unconscionability and, as such, requires a high level of substantive unconscionability to render it unenforceable.

### a. Oppression

Plaintiffs argue that the agreement is oppressive for two reasons: (1) the Plaintiffs believed that their continued employment was conditioned upon acceptance of the agreement as presented to them; and (2) the agreement was only presented to Plaintiffs after they had accepted (and in fact already begun) their employment at Paychex. Opp'n at 8.

Even assuming that these agreements were contracts of adhesion—since there is no indication that the Plaintiffs had an opportunity to negotiate their terms—that does not mean that the document was "unduly oppressive" such that the Court should refuse to enforce its terms. Armendariz, 24 Cal. 4th at 113. Even if Plaintiffs subjectively believed that they were required to sign the agreement to continue their employment, see Callahan Decl. ¶ 6; Gailani Decl. ¶ 6, Plaintiffs put forth no facts to indicate that that was the case. It is true that Plaintiffs were required to sign the agreement to participate in the particular Incentive Plan offered to them at that time, see McHugh Decl. ¶ 20, but there is no indication that failing to sign the agreement would affect their continued employment or their compensation outside of the Incentive Plan.[4] Given that there are no facts to indicate that participation in the Incentive Plan—and thus signing the agreement—was actually mandatory, the Court does not find that the document was "unduly oppressive." Armendariz, 24 Cal. 4th at 113; see also Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1262–63 (9th Cir. 2017) (finding that an agreement was not oppressive where the consequences of failing to sign the agreement were only that the plaintiff "would not

---

[4] This is true even if the Court assumes that Callahan and Gailani did not have the option to click a "Decline this agreement," button, as PNA claims and Callahan denies. See supra note 1. Even without that digital option, Callahan and Gailani had sixty days to review the agreement, ask questions about it, and decide whether they wanted to participate in the Incentive Plan. McHugh Decl. ¶ 12; see also Grant, slip op. at 6.

8

1  receive her bonus" and there was no evidence in the record that the employee would lose
2  their job if they did not sign it).

### b. Surprise

Plaintiffs argue that the agreement was surprising because it was "effectively concealed" as it was "hidden in another document misleadingly called the HR Incentive Plan Agreement." Opp'n at 9. But the provision was not "hidden" or "concealed," nor was the document "misleadingly" titled. The majority of the provisions in the document did, in fact, relate to the incentives offered by PNA under the plan. See generally McHugh Decl. Ex. B & Ex. C. The arbitration provision has its own section with a bolded title, is the same font size as the rest of the document, and the agreement, including the signature page, is only seven pages long. See id. Surprise does not arise under these facts. See, e.g., Parada v. Superior Ct., 176 Cal. App. 4th 1554, 1571 (2009) (failing to find surprise where the provisions at issue had "a heading in bold typeface accurately describing the substance of the paragraph" and "in the same typeface and font size as the rest of the provisions"); Solis v. Clean Harbors, Inc., 20-cv-2660, 2022 WL 991707, at *2 n.3 (N.D. Cal. Mar. 31, 2022) (same where the offending provision had "the same size font as the other provisions" and a "bold and underlined title").

These facts, taken together, only rise to a low level of procedural unconscionability.

### 2. Substantive Unconscionability

Substantive unconsionability occurs when the terms of the agreement are one-sided. Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003). A court will refuse to enforce an agreement, rather than sever the offending unconscionable provision, where the agreement is "permeated" with unconscionability. Armendariz, 24 Cal. 4th at 122. Plaintiff argues that substantive unconscionability permeates this agreement for four reasons: (1) the agreement lacks mutuality; (2) the agreement contains an unlawful attorneys' fee clause; (3) the confidentiality provision is overbroad; and (4) the PAGA waiver is unenforceable. Opp'n at 14. As discussed below, the agreement does not rise to a sufficiently high level of substantive unconscionability to make the arbitration provision

1  unenforceable.

### a. Mutuality

An arbitration agreement fails for lack of mutuality when it fails to provide a "modicum of bilaterality" in the application of its terms. Armendariz, 24 Cal. 4th at 117. To determine bilaterality, a court must examine "the actual effects of the challenged provisions." Lara v. Onsite Health, Inc., 896 F. Supp. 2d 831, 841 (N.D. Cal. 2012).

Plaintiffs argue that the agreement lacks mutuality because it excludes specific claims from arbitration, including "[d]isputes related to violation of the confidentiality, non-solicitation and non-compete provisions under any written agreement between you and the Company." Dispute Resolution Agreement ¶ 12(b). To Plaintiffs, the agreement "compels arbitration of the claims more likely to be brought by an employee, but exempts from arbitration" claims more likely to be brought by the employer. Id. (quoting Ramirez v. Charter Comm'cns, 75 Cal. App. 5th 365, 383 (2022)).[5] Defendant disputes this, arguing that it is "pure speculation" that employers are more likely to bring the claims exempt from arbitration against employees, and putting forth evidence which they claim suggests that such speculation is incorrect. Reply at 6–7.

Plaintiffs are correct that California courts have often found provisions like those found in ¶ 12(b) to be substantively unconscionable. See, e.g., Ramirez, 75 Cal. App. 5th at 383; Fitz v. NCR Corp., 118 Cal. App. 4th 702, 724–26 (2004); Mercuro v. Superior Ct., 96 Cal. App. 4th 167, 175–77 (2002). PNA puts forth no alternative authority. Instead, it provides complaints from two cases filed in California against PNA, arguing that, because these are the only cases filed in California on this issue to PNA's knowledge, this evidence rebuts Plaintiff's argument (and the assumption of the courts in Ramirez, Fitz, and Mercuro) that employers are more likely to bring such claims. See Moscarelli Decl. (dkt.

---

[5] Plaintiffs make an additional argument that a separate agreement, the CNN, compounds the lack of mutuality in the parties' agreement as a whole. Opp'n at 11–12. Because the Court is required to assess the validity of an agreement to arbitrate without reference to other agreements between the parties, see Rent-A-Center, 561 U.S. at 70, it declines to address arguments regarding separate agreements. See Lara, 896 F. Supp. 2d at 843.

10

28-1); Request for Judicial Notice (RJN) (dkt. 29).

The Court is not convinced. The two complaints,[6] both filed in 2019 by former employees in California state court, reference letters from PNA indicating that PNA would enforce the provisions of their agreements against them. See RJN Ex. 1 ¶ 11; id. Ex. 2 ¶ 11. Those letters appear to prompt the suits, which seek a declaratory judgment that such agreements are unenforceable. Id. Even if these suits are, in fact, "[d]isputes related to violation of" non-compete agreements, rather than disputes challenging to the legality thereof, see supra Section III.A, two suits by employees that arise out of threats of enforcement by the employer do not rebut the arguments of Plaintiff and other California courts that employers are more likely to seek to assert such claims.

Nevertheless, even if the Court were to find that this provision was substantively unconscionable, the Court may sever the unconscionable provision where "the illegality is collateral to the main purpose of the contract." Armendariz, 24 Cal. 4th at 124. Where, as here, procedural unconscionability is low, and no other terms are held to be substantively unconscionable, the Court does not find that this provision "taint[s] the entire arbitration provision with illegality." Gonzalez v. Newport Exch. Holdings, Inc., 09-cv-3784, 2009 WL 10675776, at *4 (C.D. Cal. Oct. 15, 2009) (same).

### b.  Attorneys' Fees Provision

Plaintiffs argue that the provision in the arbitration agreement requiring payment of the opposing party's attorneys' fees in the event of filing "in an improper jurisdiction or venue" is substantively unconscionable because "an employee seeking to challenge the enforceability of the Arbitration Agreement in a judicial proceeding would face an increased financial risk and disincentive to do so." Opp'n at 12.

Plaintiffs point to the holding in Ramirez to bolster this claim, but as PNA points out, Ramirez relied heavily on a FEHA limitation on the recovery of attorneys' fees. Ramirez, 75 Cal. App. 5th at 377–79. Where Ramirez does not rely on FEHA, it relies on a

---

[6] At PNA's urging, the Court takes judicial notice of these public filings. See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002).

11

statement in Armendariz: "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal. 4th at 110–11 (emphasis omitted). As explained above, this is not a situation where Paychex imposed "mandatory arbitration as a condition of employment"; Paychex imposed arbitration as a condition of entering into an agreement to receive particular incentives. See supra Section III.C.1.a. Plaintiffs fail to put forth binding authority indicating that such a provision is unlawful without the requisite procedural unconscionability present in Armendariz and Ramirez, and the Court finds none. Thus, this provision does not render the agreement substantively unconscionable.

### c. Confidentiality Provision

Plaintiffs argue that the confidentiality provision in the agreement[7] is substantively unconscionable because it limits Plaintiffs' ability to engage in informal discovery, which would increase their litigation costs. Opp'n at 13. PNA argues that Plaintiffs' "attack" on the confidentiality provision is an "attack[] on arbitration itself," rendering the argument impermissible under Concepcion, which provides confidentiality requirements as an example of a provision that allows arbitration to run smoothly. Reply at 8–9; Concepcion, 563 U.S. at 344–45. The Court agrees with PNA that finding such a provision to be substantively unconscionable would "be far out of step" with the "liberal federal policy favoring arbitration" that courts are bound to follow. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30, 35 (1991) (internal quotation marks and citations omitted).[8]

---

[7] "Except as required by law, the arbitration shall be conducted confidentially, and all parties shall agree to maintain the confidentiality of all matters related thereto." Dispute Resolution Agreement ¶ 12(d).

[8] Additionally, courts have found that confidentiality provisions are not substantively unconscionable because parties may argue during arbitration itself that the confidentiality provision is unenforceable. See, e.g., Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1059 n.9 (9th Cir. 2013); Bogarding v. JPMorgan Chase Bank, 16-cv-2485, 2016 WL 8904413, at *10 (C.D. Cal. Oct. 31, 2016).

### d. PAGA Waiver

Finally, Plaintiffs argue that the PAGA waiver included in the agreement is substantively unconscionable. But as discussed above, the PAGA waiver is consistent with the Supreme Court's holding in <u>Viking River Cruises</u> and is thus consistent with applicable law. <u>See</u> <u>supra</u> Section III.B. As a result, the PAGA waiver is not substantively unconscionable.

As a whole, Plaintiffs fail to establish the requisite high degree of substantive unconscionability that would render the arbitration agreement unenforceable.

## IV. CONCLUSION

PNA's motions to compel individual arbitration and to dismiss the remaining non-individual PAGA claims are GRANTED. Plaintiffs are ordered to submit their respective individual PAGA claims to individual arbitrations with the American Arbitration Association pursuant to their Dispute Resolution Agreements.

**IT IS SO ORDERED.**

Dated: October 20, 2022



CHARLES R. BREYER
United States District Judge